UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| Tracy Edward Reiman and Diane Carol Reiman, | Case No. 09-70776 |
| Debtors. | Hon. Phillip J. Shefferly |
| _____/ | |

## OPINION DENYING CHAPTER 7 TRUSTEE'S
## MOTION TO REVOKE ABANDONMENT OF REAL PROPERTY

### INTRODUCTION

This opinion addresses a Chapter 7 trustee's Rule 60(b) motion to revoke the abandonment

of real property to the debtors under § 554(c) of the Bankruptcy Code that occurred upon the closing

of their Chapter 7 case. For the reasons explained in this opinion, the Court has determined to deny

the Chapter 7 trustee's motion.

### JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### FACTS

On October 4, 2009, Tracy Edward Reiman and Diane Carol Reiman ("Reimans") filed this

Chapter 7 case. The Reimans' schedule A listed ownership of real property located at

1766 Glen Meadow, Leonard, Michigan. This was the Reimans' home. The Reimans' schedule A

stated the value of their home at $275,000.00, and stated that there was a secured claim in the

amount of $346,772.10 with respect to their home. Schedule D identified the holder of the secured

claim as HSBC Mortgage Corporation. On November 19, 2009, the § 341 first meeting of creditors

was held.  The Chapter 7 trustee, Fred Dery ("Trustee"), filed a no asset report on November 20, 2009, the day after the § 341 meeting.  The Trustee's report states as follows:

> I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered.  I request that I be discharged from any further duties as trustee.  Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: . . . Assets Abandoned: $283000.00[.]

On January 22, 2010, the Reimans received their discharge.  On February 12, 2010, this Chapter 7 case was closed.

On June 8, 2010, the Trustee filed an ex-parte motion to reopen this case.  The motion alleged that after the bankruptcy case was closed, the Reimans' home was foreclosed on May 18, 2010, and that the applicable state law redemption period would expire on November 18, 2010.  The motion further alleged that although the mortgage had been foreclosed, the Trustee "has been informed by a realtor that the bid price at the sheriff's sale was significantly below the fair market value of the Glen Meadow property."  The motion went on to explain that "but for the bankruptcy case having been closed, the Glen Meadow property could be sold for market value, the redemption amount paid to the foreclosure buyer, and the difference used to pay creditors."  The motion asserted that although the Reimans' interest in the Glen Meadow property was "technically abandoned" when the Chapter 7 case was closed, the Court has the authority to "revoke the abandonment and bring the Glen Meadow property back into the estate" under Rule 60(b), as applied in LPP Mortgage, Ltd. v. Brinley, 547 F.3d 643 (6th Cir. 2008).

On June 10, 2010, the Court entered an order reopening this bankruptcy case under § 350(b) of the Bankruptcy Code and, in such order, waived the fee to reopen the case, permitted the former

Trustee to withdraw his no asset report, and reappointed the Trustee. However, the Court denied without prejudice the request contained in the motion to "revoke the technical abandonment" of the Glen Meadow property. The Court's order explained that the Court would not consider a request for such relief on an ex-parte basis, but instead would require the now reappointed Trustee to file and serve a motion to revoke abandonment, accompanied by a notice and opportunity for all parties in interest to be heard.

On June 11, 2010, the Trustee filed a motion to revoke abandonment of the Glen Meadow property, and an ex parte motion to expedite the hearing. The facts and the legal arguments set forth in the motion to revoke abandonment were identical to the ex-parte motion previously filed by the Trustee. Both the motion to revoke abandonment and the motion to expedite the hearing explained that "shortened notice [was] necessary to prevent the debtors from transferring the real property on the advice of unscrupulous third parties." The only party who objected to the relief requested by this motion was the United States Trustee. On June 25, 2010, the Court held a hearing on the Trustee's motion to revoke abandonment.[1]

_____

[1] In addition to the motion to revoke abandonment in this case, the Court also scheduled for hearing at the same time two other identical motions to revoke abandonment in closed cases: Monica Edith Powell, case no. 09-62423, and Michele Houser-Dunbar, case no. 08-69890. The day before the hearing, the motion to revoke abandonment was withdrawn in the Houser-Dunbar case. At the hearing on June 25, 2010, the same attorney argued on behalf of the trustees in both the Reiman and Powell cases. The Court also scheduled for hearing at the same time an ex-parte application to employ a real estate broker in another case involving similar issues, Scott Barrett, case no. 09-70625. As will be discussed later in the opinion, the Court also held a hearing on June 30, 2010 in yet another case involving an identical motion to revoke abandonment argued by the same attorney that argued on behalf of the trustees in the Reiman and Powell cases. That case is David L. Richards, case no. 09-65157. By agreement of the parties present at the June 25, 2010 hearing, the Court allowed one record to be made for all of these cases. Similarly, at the June 30, 2010 hearing in the Richards case, the Court allowed the parties to incorporate by reference the arguments that they made at the June 25, 2010 hearing.

At the June 25, 2010 hearing, the Trustee advised the Court that the Trustee (and other trustees in this district) have recently filed many motions to reopen closed Chapter 7 cases for the purpose of revoking what the Trustee described as the "technical" abandonment that occurs under § 554(c) of the Bankruptcy Code upon the closing of a case. The Trustee offered to provide the Court with newspaper articles, data and other information regarding the proliferation of foreclosure sales of residences in the Detroit metropolitan area. The Trustee explained that because of the glut of homes in the foreclosure process in this region, the Trustee has recently observed that many lenders were now bidding amounts at foreclosure sales that were considerably less than both the outstanding mortgage debt and what the Trustee believes to be the fair value of these properties. When the Court inquired as to why the Trustee believed that these lenders were bidding in less than the fair value of these properties at the foreclosure sales, the Trustee explained that he had been informed of that fact by a real estate broker that he has frequently employed, Ralph Roberts. The Trustee argued that this recent phenomenon was quite "unexpected" to the Trustee (and to other trustees in this district). According to the Trustee, because lenders were now bidding in less than the trustees anticipated they might bid in at the time that the trustees closed these Chapter 7 cases, the trustees should now be allowed to "correct the unexpected" by reopening these bankruptcy cases to revoke the technical abandonment that occurred upon the closing of such cases. The Trustee reasoned that this would permit the trustees in these cases to possibly sell the properties in these cases for an amount in excess of the amount necessary to redeem from the foreclosure sale and provide a distribution to the unsecured creditors whose debts were discharged in these closed Chapter 7 cases. The Trustee acknowledged that in each of these cases the trustee had previously certified that the trustee had undertaken a diligent inquiry and that there were no assets to administer

-4-

in these cases while they were open.  But the Trustee argued that the unexpectedly low bids at foreclosure sales after these Chapter 7 cases were closed provides enough of a reason to reopen these cases and revoke the technical abandonment so that the trustees in these cases may somehow realize upon the perceived value created by the unexpectedly low bids at these foreclosure sales.  Further, the Trustee argued that reopening these cases and revoking the technical abandonment would also somehow protect the former debtors in these cases from selling their redemption rights to "unscrupulous" third parties who might be trying to take advantage of the lower bids at the foreclosure sales by purchasing the debtors' rights to redeem from these foreclosure sales.

The United States Trustee did not dispute the facts alleged by the Trustee but instead argued that these facts do not warrant revocation of abandonment.  The United States Trustee also argued that the strong policy of finality of judicial proceedings would be greatly undermined if the Trustee in this case, and the trustees in other similar cases, are allowed to reopen these cases, revoke abandonment, and attempt to administer a property interest simply because a real estate broker has now informed them that the real estate broker might be able to generate some value for creditors in these closed cases, if permitted to do so.  At the conclusion of the hearing on June 25, 2010, the Court took under advisement the motion to revoke abandonment in both the <u>Reiman</u> case and the <u>Powell</u> case, as well as the application to appoint a real estate broker in the <u>Barrett</u> case.

As noted above, there are a number of identical motions to revoke abandonment that are now being filed by the Trustee and by other trustees in closed cases based on similar circumstances as in <u>Reiman</u>.  As it turns out, one of those motions, filed in the <u>Richards</u> case, was scheduled for hearing on June 30, 2010, a few days afer the Court took the motions under advisement in <u>Reiman</u>, <u>Powell</u> and <u>Barrett</u>.  The debtor in <u>Richards</u> filed a Chapter 7 petition, case no. 09-65157, on

-5-

August 13, 2009. Homer McClarty was appointed as the Chapter 7 trustee. The debtor's schedule A stated that the debtor owned real property at 316 Eastlawn, Rochester Hills, Michigan. Schedule A showed the value of the property to be $0.00, and the amount of the secured claim to be $172,055.00. Schedule D indicated that there was a mortgage on the debtor's residence in the amount of $172,055.00. On September 23, 2009, the trustee conducted the § 341 first meeting of creditors. On the following day, the trustee filed a no asset report with the identical certification contained in the no asset report filed by the Trustee in the Reiman case. The Richards case was closed on November 30, 2009. On June 16, 2010, the former trustee in the Richards case filed a motion to reopen that case for the purpose of revoking the technical abandonment of the 316 Eastlawn property. The motion was identical to the motions in Reiman and Powell.

On June 30, 2010, the Court held the hearing in the Richards case. The same attorney that represented the trustees in Reiman and Powell also represented the trustee in Richards at the June 30, 2010 hearing. Again, the United States Trustee appeared and objected to the relief sought. Both the attorney for the Richards trustee and the attorney for the United States Trustee incorporated by reference all of the arguments that each of them had made in writing and at the oral argument in the Reiman case, and supplemented those arguments at the June 30, 2010 hearing.

Perhaps because of the issues raised at the June 25, 2010 hearing, the attorney for the Richards trustee brought to the June 30, 2010 hearing Ralph Roberts, the real estate broker who had provided the Trustee in the Reiman case with the information regarding the foreclosure sale in that case. Although the Court did not take testimony at the June 30, 2010 hearing, Roberts was permitted to address the Court without any objection by either of the parties who appeared. Roberts explained to the Court that he is a real estate broker, and that he tracks foreclosure sale postings in the

-6-

tri-county area of the Detroit metropolitan region. Roberts further explained that he receives opening bids two to three days before the sale. He has a "team" in each county that then goes out to the foreclosed property and assesses whether there is value in the property over and above the bid price at the foreclosure sale. This assessment is based upon Roberts' years of experience as a successful realtor with respect to sales of residential homes in the Detroit metropolitan region.

Roberts went on to describe how, once he finds a foreclosure sale where the bid was less than what he believes to be the value of the property, he then looks to see if there is a bankruptcy case that was previously filed by the homeowner whose mortgage was foreclosed. Roberts explained that he makes a distinction as to whether a mortgage "was before the bankruptcy" or after. If the mortgage "was before the bankruptcy," a trustee would have no way of knowing it could be discounted at some future foreclosure sale. In that case, in his words, "I think that belongs to the estate." If there is some value that can be realized by selling the property for more than the bid price at the foreclosure sale, Roberts stated that he believes that such value should go back to the creditors in the closed bankruptcy case. On the other hand, if the mortgage debt was incurred after a bankruptcy, "I don't turn those in to the trustee because I believe that belongs on the other side." Likewise, if there is no bankruptcy in the homeowner's history, "and the bank is willing to discount, I think that benefit is 100% theirs," i.e. the homeowners'.

Roberts further explained that he believes everybody benefits by reopening these closed cases to allow the trustee to sell the property for more than the bid price at the foreclosure sale: the party that bid at the foreclosure sale will get its bid price; the value that is generated over the bid price will be distributed to the creditors in the closed bankruptcy case; and, if the debtor in such case amends his or her exemptions, the debtor too could share in this upside value. Based upon this

-7-

recent phenomenon of lenders bidding less than the value of the properties, Roberts explained that he has built a "new business model" by tracking foreclosure sales; identifying properties where the bid is less than the value; looking to see if there is a prior bankruptcy case filed by the mortgagor; and approaching the former trustee in the closed bankruptcy case to have the trustee reopen the case and revoke the abandonment. Finally, Roberts explained that in the cases where he has identified a low foreclosure bid, he has been very successful in selling the properties for more than the bid prices.

The Trustee also tried to explain why, when there is a bankruptcy case in the homeowner's past, Roberts contacts the former Chapter 7 trustee and not the homeowner. The Trustee had three reasons. First, according to the Trustee, the homeowners do not understand the process and sometimes do not even realize that there has been a foreclosure sale. Second, the homeowners may have tried to contact their former bankruptcy attorney, who expresses no interest in representing them, the case having been closed and their services completed. The third and "perhaps the most important reason" is that, after pursuing a number of attempted sales, Roberts has determined that it is far easier and there is a much greater likelihood of success in working with the trustee in brokering a sale of the property. This is because a trustee's involvement means that the purchaser and seller may be able to obtain a bankruptcy court order approving the sale, which is preferable from the title company's perspective. Although the Trustee's motion also alleged that reopening the closed bankruptcy case and revoking the technical abandonment also serves to protect the debtors in these closed cases from unscrupulous third parties, the Trustee did not identify any such third parties at the hearing.

-8-

At the conclusion of the June 30, 2010 hearing, the Court took under advisement the motion to revoke abandonment in the <u>Richards</u> case and indicated to the parties that it would also rule upon the motion in the <u>Richards</u> case at the same time at it rules in the <u>Reiman</u> case.

<u>DISCUSSION</u>

Section 554 of the Bankruptcy Code governs abandonment of property of the estate. It has four subsections. The first addresses abandonment by a trustee of "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The second provides for a party in interest to request that a trustee be ordered to abandon "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." § 554(b). Procedurally, both subsections (a) and (b) require notice and a hearing, and are implemented through a court order. Section 554(c), which is the subsection at issue in this case, provides that, "[u]nless the court orders otherwise, any property scheduled under section 521(1)[2] of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." § 554(c). Finally, the last subsection covers property that a debtor has not scheduled under § 521(a). Such property of the estate is not abandoned, is not administered, and remains property of the estate. § 554(d). <u>See generally</u> <u>Morlan v. Universal Guaranty Life Ins. Co.</u>, 298 F.3d 609, 618 (7th Cir. 2002) (discussing the differences in the four subsections).

Unlike the first two subsections, § 554(c) and (d) do not require notice and a hearing and are implemented by operation of law rather than by a court order. Also unlike § 554(a) and (b) of the

---

[2] This should probably refer to section 521(a) of the Bankruptcy Code. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 renumbered that section, but the cross reference in § 554(c) was not corrected.

Bankruptcy Code, § 554(c) of the Bankruptcy Code does not require any demonstration that the property to be abandoned is burdensome to the estate or of inconsequential value and benefit to the estate. Moreover, § 554(c) provides not just for abandonment, but for abandonment *to the debtor*. Therefore, the evidentiary showing required by § 554(a) and (b) is not necessary to abandonment under § 554(c), and the abandonment that does occur under § 554(c) by operation of law upon the closing of a case results in abandonment of the property to a person: i.e., the debtor. See Stark v. Moran (In re Moran),  566 F.3d 676, 679 (6th Cir. 2009) (noting that, under § 554(c), "bankruptcy law contemplates the return of leftover assets to the debtor at the close of a case"). Moreover, property that was "transferred to the estate in bankruptcy by operation of law" is returned to the debtor "nunc pro tunc, so that he is treated as having owned it continuously." Morlan v. Universal Guaranty Life Ins. Co., 298 F.3d at 617 (citing in part Sessions v. Romadka, 145 U.S. 29, 51-52 (1892); Brown v. O'Keefe, 300 U.S. 598, 602-03 (1937) (holding that title to assets abandoned by the trustee as burdensome passed to the debtor as if no bankruptcy had been filed)) (other citations omitted).

The Trustee refers in his motion to revocation of the abandonment under § 554(c) as "mere technical abandonment." The word "technical" does not appear in § 554(c). The statute itself does not describe the abandonment under § 554(c) as technical in any respect, nor is there any logical reason why the term "technical" should be applied to an abandonment under § 554(c). Nonetheless, a number of courts have referred to the abandonment under § 554(c) that occurs by operation of law at the time of closing a case as a technical abandonment in an effort to distinguish abandonment under § 554(c) from the other types of abandonment that occur only by court order under § 554(a) and (b). While the Court is not persuaded of the need for judicial gloss that treats abandonment

-10-

under § 554(c) as somehow being technical, the Court recognizes that there are a number of opinions that have done just that. See LPP Mortgage, Ltd. v. Brinley, 547 F.3d 643, 648 n.3 (6th Cir. 2008); Stoebner v. Wick (In re Wick), 276 F.3d 412, 414 (8th Cir. 2002); Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001); Woods v. Kenan (In re Woods), 173 F.3d 770, 776-77 (10th Cir. 1999). It seems that a more legally precise description of the abandonment that occurs under § 554(c) is to simply state that abandonment under § 554(c) occurs statutorily, by operation of law. But regardless of whether the abandonment under § 554(c) is described as technical or not, the pertinent question is whether that abandonment can somehow be revoked.

Section 554 itself does not provide for revocation of abandonment.[3] However, the case law does. Abandonment of property under § 554 of the Bankruptcy Code may be revoked in certain circumstances. See Kloian v. Kelley (In re Kloian), No. 02-1843, 115 Fed. Appx. 768, 769 (6th Cir. Sept. 10, 2004) (describing "the general rule" that "the abandonment of an asset of a bankruptcy estate pursuant to 11 U.S.C. § 554 is irrevocable" with exceptions, for example, when an asset is not disclosed or "when the decision-maker acts from mistake or inadvertence") (citations omitted). Because abandonment under § 554(a) and (b) occurs by order of the court, relief from such an order has historically been considered under Fed. R. Civ. P. 60(b). See, e.g., In re Lintz West Side Lumber, Inc., 655 F.2d 786, 790-91 (7th Cir. 1981) (revoking abandonment under Rule 60(b) to correct a mistake in an earlier order, noting that "[t]here is no indication in the Rules of Bankruptcy

---

[3] The remedy of revocation does expressly appear elsewhere in the Bankruptcy Code. A Chapter 7 discharge may be revoked under § 727(d). Confirmation orders may be revoked in Chapter 11, Chapter 12 and Chapter 13 under § 1144, § 1230 and § 1330, respectively. Each of these subsections has very specific grounds and time limits.

Procedure that abandonment orders should be treated differently than other orders by a bankruptcy judge which are subject to reexamination").

Even though abandonment under § 554(c) occurs by operation of law and not by court order, courts have also applied Rule 60(b) to determine whether to grant a revocation of statutory abandonment under § 554(c). See Morlan v. Universal Guaranty, 298 F.3d at 618 (applying Rule 60(b) to a § 554(c) abandonment, and commenting that "'abandonment is revocable only in very limited circumstances, such as where the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset'") (quoting Catalano v. Commissioner, 279 F.3d 682, 686 (9th Cir. 2002)); Woods v. Kenan, 173 F.3d at 779-80 (applying Rule 60(b) to a § 554(c) abandonment that occurred when the case was mistakenly closed while a sale motion was pending, and cautioning that "the granting of Rule 60(b) relief may be challenged on equitable grounds" such as where revocation of abandonment "would unfairly prejudice the purported owner of the property"). The Sixth Circuit has agreed with that line of cases, finding that the use of Rule 60(b) "strikes the appropriate balance between promoting finality and allowing courts to grant relief in limited circumstances." LPP Mortgage, Ltd. v. Brinley, 547 F.3d 643, 649 (6th Cir. 2008) (affirming the bankruptcy court's reliance on the decision from In re Woods, 173 F.3d 770 (10th Cir. 1999), finding that approach persuasive).

Rule 60(b), incorporated by Fed. R. Bankr. P. 9024, provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on these limited reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

-12-

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an  opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

"[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." In re Ferro Corp. Derivative Litigation, 511 F.3d 611, 623 (6th Cir. 2008) (internal quotation marks and citation omitted).  "As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment." Lewis v. Alexander, 987 F.2d 392, 396 (6th Cir. 1993) (citation omitted).  The decision to grant relief under Rule 60(b) is left to the sound discretion of the Court.  See Pruzinsky v. Gianetti (In re Walter), 282 F.3d 434, 440 (6th Cir. 2002).

The Trustee urges the Court to rely on the Sixth Circuit Court of Appeals decision in Brinley and Rule 60(b)(5) and (6) as authority to revoke the abandonment "so that the Glen Meadow Property [can] be sold for the benefit of creditors."[4]  Brinley addressed appeals in two cases with

---

[4] The Trustee seems to assume that fee simple title comes back into the estate upon revocation of the abandonment, and that he can now sell the property itself.  However, there may be some question as to the exact property interest that would come back into the estate if the Trustee's motion is granted, since there has been a foreclosure sale post-closing.  See Young v. United States (In re Young), 48 B.R. 678, 680 (Bankr. E.D. Mich. 1985) (reviewing Michigan law and the change in the interest of the homeowner when a mortgage upon their property is foreclosed, and concluding that post-foreclosure, the mortgagor holds "bare legal title only to the premises," along with "a right of redemption during the statutory period") (internal quotation marks and citations omitted).  The Court need not determine the exact nature of the property right that the Reimans now hold for purposes of deciding whether the facts in this case warrant Rule 60(b) relief.

-13-

similar facts. The Chapter 7 trustee in both cases had abandoned property of the estate and closed the cases while the debtors' § 522(f) actions to avoid real property judgment liens, held by the same creditor, were still pending. <u>LPP Mortgage v. Brinley</u>, 547 F.3d 643, 645-47. An appeal of the bankruptcy court's lien avoidance ruling resulted in a partial reversal and remand, with a finding that the judgment creditor's liens were significantly avoided. <u>See</u> <u>In re Brinley</u>, 403 F.3d 415 (6th Cir. 2005). This avoidance created unencumbered equity in the real property. The judgment creditor sought to reopen the cases, revoke the abandonment, and have the Chapter 7 trustee administer the new found equity for the benefit of unsecured creditors, including, of course, itself. The bankruptcy court granted that relief and the Sixth Circuit Court of Appeals affirmed. 547 F.3d at 646-47. The Sixth Circuit based its holding in that case on subrules (5) and (6). 547 F.3d at 650. Rule 60(b)(5) requires "substantial change, unforeseenness, oppressive hardship, [ ] a clear showing" and "caution" in its use. <u>Olle v. The Henry & Wright Corp.</u>, 910 F.2d 357, 364 (6th Cir. 1990) (internal quotation marks and citation omitted). Rule 60(b)(6) is even narrower, with the "public policy favoring finality of judgments and termination of litigation" being even stronger when a court exercises its discretion under this subrule. <u>In re Ferro Corp. Derivative Litigation</u>, 511 F.3d at 623 (internal quotation marks and citation omitted).

The Sixth Circuit did not explain precisely how subsections (5) and (6) of Rule 60(b) were applicable to the facts in that case. Grounds for relief under Rule 60(b)(5) include that the judgment is based on an earlier judgment that has been reversed or vacated. In <u>Brinley</u>, Rule 60(b)(5) was arguably applicable because the trustee's decision to close that case while the § 522(f) action was still pending was based on his understanding of the law at that time. The Sixth Circuit ultimately had a different interpretation of § 522(f), which changed the amount of equity in the property.

-14-

The Sixth Circuit also cited Rule 60(b)(6) as a basis for its ruling. Rule 60(b)(6) is applied "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989) (citations omitted). "This is because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." Rogan v. Countrywide Home Loans, Inc. (In re Brown), 413 B.R. 700, 705 (B.A.P. 6th Cir. 2009) (citing Olle v. The Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990)). Rule 60(b)(6) requires "something more" than circumstances covered by the first five clauses. And those circumstances must include "extreme and undue hardship" in an "unusual" situation "where principles of equity *mandate* relief." Olle v. The Henry & Wright Corp., 910 F.2d at 365 (emphasis in original).

Although the Trustee's motion does not specify which subsection of Rule 60(b) applies, during oral argument he clarified that like Brinley, he too relies upon Rule 60(b)(5) and (6). The Trustee did not argue based on any of the other subsections of Rule 60(b). The Trustee argues that the Reimans' case presents an even more compelling set of facts than does Brinley. However, a careful reading of Brinley shows that it involved an atypical, extraordinary set of circumstances, easily distinguishable from this case.

First, the Chapter 7 case in Brinley was closed while a lien avoidance action brought by the debtor under § 522(f) of the Bankruptcy Code was pending. The Sixth Circuit described the closing of the Chapter 7 case under those circumstances as a "premature closing" of the case. Brinley, 547 F.3d at 648. There is no evidence, or even any suggestion, that the Reimans' Chapter 7 case was somehow closed "prematurely."

-15-

Second, the Brinley trustee closed that bankruptcy case based upon the trustee's understanding of the law under § 522(f) of the Bankruptcy Code as it existed at that time. To the trustee's surprise, the Sixth Circuit Court of Appeals ultimately ruled in favor of the debtors and applied § 522(f) in a way that created substantial equity in assets that had previously been property of the estate that the trustee, based on his knowledge of existing law, could not have foreseen.[5] On remand, the bankruptcy court acknowledged that fact, and pointed out that it considered "the facts of this case somewhat atypical and [did] not expect to encounter a factual situation like this again." 347 B.R. 613, 619. In these circumstances, the bankruptcy court, affirmed by the Sixth Circuit, held that there was a basis for Rule 60(b) relief so that the "windfall [went] to the bankruptcy estate rather than the debtor." Id. The Trustee has pointed to no change in the legal landscape that even remotely resembles what happened in Brinley.

Third, as noted, the Brinley court expressly recognized that its facts were atypical, even extraordinary. In contrast, the Trustee in the Reiman case, and the trustees in the other similar cases with pending motions to revoke, premise their very arguments on the numerous cases in this district where lenders are supposedly now bidding less at foreclosure sales than trustees anticipated they might bid based upon the scheduled values of the properties and the amounts of the scheduled mortgage debts in these bankruptcy cases. The standardized motions to revoke abandonment that the Trustee and other trustees are filing in these cases demonstrate that the facts in this case (and in Richards, Powell and other cases) are anything but atypical or extraordinary.

---

[5] See generally Trahan v. Day Kimball Hospital (In re Trahan), 337 B.R. 448, 449-50 (Bankr. D. Conn. 2006) (noting that bankruptcy courts had previously reached inconsistent decisions under § 522(f), and following the consensus now reached by courts of appeals, including the Sixth Circuit, that applies a literal reading of § 522(f) in a way that supersedes state-law priority schemes).

Here, the Trustee performed the Trustee's statutory duties under § 704 of the Bankruptcy Code in investigating the financial affairs of the Reimans, making a diligent inquiry into the financial affairs of the Reimans, and ultimately concluding that there was no value in any asset to be administered for the benefit of creditors. Unlike <u>Brinley</u>, there was no unexpected change in the law after the Reimans' bankruptcy case was closed. Rather, this case simply presents an instance where there may now be more value in a property interest that was previously property of the estate than the Trustee believed to be the case while the Trustee was administering the case. This perceived increase in value exists by reason of the fact that the lender bid less at the foreclosure sale than the Trustee anticipated the lender might bid. The Trustee made an assumption during the administration of the estate about what the lender may bid at a later foreclosure sale. The Trustee now explains that that assumption later turned out to be incorrect. But that does not mean that the Trustee made a mistake nor did this assumption prove incorrect because of any unforeseen change in the law that came as a surprise to the Trustee.

The Trustee had ample opportunity during the Chapter 7 case to analyze the value of the Glen Meadow property, and the Trustee's certification in his final report suggests that this is exactly what the Trustee did. The fact that there may now be some additional value in the Reimans' interest in the Glen Meadow property does not provide sufficient grounds under Rule 60(b)(5) to revoke a § 554(c) statutory abandonment. "The trustee . . . may not reassert control over the property in light of subsequent events–for example, if it later becomes clear that a piece of property has a greater value than was previously believed." <u>Kloian v. Kelley</u>, 115 Fed. Appx. 768, 769 (6th Cir. Sept. 10, 2004) (citations omitted); <u>see also</u> <u>Gencorp, Inc. v. Olin Corp.</u>, 477 F.3d 368, 373 (6th Cir. 2007) (analyzing relief based on an intervening development in the law not under Rule 60(b)(5) but under

Rule 60(b)(6), and concluding that such changes "by themselves rarely constitute the extraordinary circumstances required for relief" and "[i]nstead, courts have relied on an applicable change in decisional law, coupled with some other special circumstance, in order to grant Rule 60(b)(6) relief") (internal quotation marks and citations omitted).

The <u>Brinley</u> court, to use the Trustee's words, "corrected the unexpected," i.e., a change in binding precedent concerning § 522(f). The "unexpected" in this case is that, some time after this case was closed, a broker approached the Trustee to inform the Trustee that the lender had bid less for the property at the foreclosure sale than either the realtor or the Trustee anticipated. That is not sufficient under either subsections (5) or (6) of Rule 60(b) to grant relief from the abandonment that occurred by operation of law under § 554(c) of the Bankruptcy Code. Although <u>Brinley</u> does stand for the proposition that Rule 60(b) *may* be used to grant relief from abandonment under § 554(c) of the Bankruptcy Code, it does not authorize the wholesale reopening of Chapter 7 bankruptcy cases and the re-creation of bankruptcy estates based upon investigations conducted after the bankruptcy cases are closed to determine what happened post-closing to the property interests that were abandoned to the debtors.

## CONCLUSION

Ralph Roberts was candid with the Court. He has developed a business model based on tracking foreclosure sales and finding those sales that he thinks occurred with a bid price less than he believes he could sell the property for. There is nothing wrong about developing that business model. But instead of approaching the former homeowner whose mortgage was foreclosed, and asking to assist the homeowner in perhaps trying to either redeem or sell the right of redemption from that sale, what seems odd is that the broker digs through the history of the homeowner to find

-18-

out whether there was a Chapter 7 case sometime in the homeowner's past and, if so, then approaches the former trustee in the closed Chapter 7 case. The former trustees then ask to invoke this Court's jurisdiction by opening up the closed Chapter 7 case to see if a deal can now be put together by the broker to create some value for the creditors in the closed Chapter 7 case, all because that broker believes that it is more fair that if there is value to be monetized, it should be monetized for creditors in the closed bankruptcy case, rather than for the party who holds the statutory right to redeem from the foreclosure sale. None of those facts, in the Court's view, support revoking the abandonment that occurs by operation of law under § 554(c) of the Bankruptcy Code, even recognizing that <u>Brinley</u> considers such abandonment to be a technical abandonment that is susceptible to a Rule 60(b) analysis.

The Court agrees with the United States Trustee that there is a strong policy of finality that should be respected in these cases. Debtors file Chapter 7 cases to get their discharge and move on with their lives. Congress has created a body of law that reflects its intent that debtors and creditors be subject to the jurisdiction of the bankruptcy court for a limited period of time. A petition for relief does not start a never-ending process in the bankruptcy court. The Trustee's argument that the policy of finality must give way because this is a "win-win" for everybody if the Trustee is successful is not persuasive. The law provides for abandonment of the property upon closing. The only means available to get relief from that abandonment is, according to <u>Brinley</u>, a Rule 60(b) analysis. The fact that the Trustee and the broker believe that they could deliver value to creditors whose claims were discharged in the Chapter 7, and even possibly to the debtors who might amend their exemptions, is not enough of a reason to disregard the requirements of Rule 60(b) and the statutory abandonment that occurs by operation of law under § 554(c) of the Bankruptcy Code. Nor

-19-

is the Trustee's generalized assertion that there may be unscrupulous third parties that might try to take advantage of the former Chapter 7 debtors sufficient.

If a Chapter 7 trustee is concerned about the potential value of property of the estate that might be realized in the future, but is fearful about losing the opportunity to monetize that value by closing the case and having the property abandoned to the debtors under § 554(c), there is an express remedy available in the statute. Section 554(c) states on its face that the abandonment occurs by operation of law "unless the court orders otherwise." If a trustee has reason to believe that a case should be closed but that there is some value that might be realized in the future for the benefit of creditors and therefore should not be abandoned, the trustee has the opportunity and the right, under § 554(c), to ask the Court to "order otherwise," at which time all parties in interest will have notice and an opportunity to be heard with respect to such request, and the issue can be joined for resolution by the Court *before* the Chapter 7 case is closed and the abandonment occurs by operation of law. Although the Trustee recognized at the hearing that this remedy is available under § 554(c), the Trustee rejected its use because it would create a "monumental expense" for Chapter 7 trustees in what may be no asset cases. According to the Trustee, it is much easier for a Chapter 7 trustee to file a report of no assets, close a case, wait to see what the mortgage lender does post-closing, and then after the fact move to reopen the case and revoke the statutory abandonment if the lender bids low at the foreclosure sale. Although this procedure may be expedient for Chapter 7 trustees, it does not provide a foundation for relief under Rule 60(b), and is not a substitute for the statutory remedy to "order otherwise" as expressly set forth in § 554(c).

According to the Trustee, the "most important" reason why Roberts approaches former trustees is that he has had much greater success in working with trustees in brokering sales of

foreclosed properties than he has with the former homeowners themselves. That may explain why Roberts prefers to work with trustees, but it is no reason for the Court to exercise its discretion to facilitate real property transactions among non-debtor parties after a bankruptcy case has been fully administered and adjudicated. That is not the purpose of the bankruptcy court.

Therefore, the Court concludes that the Trustee's motion to revoke abandonment must be denied. The Court will enter a separate order consistent with this opinion.

For publication

Signed on July 16, 2010

                                                  /s/ Phillip J. Shefferly
                                                   Phillip J. Shefferly
                                                   United States Bankruptcy Judge